UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EUGENE SCALIA, <br><br> Plaintiff(s), <br><br> v. <br><br> SIN CITY INVESTMENT GROUP, INC., et al., <br><br> Defendant(s). | Case No. 2:19-CV-361 JCM (NJK) <br><br> ORDER |

The court presently considers plaintiff Eugene Scalia, U.S. Secretary of Labor's, motion for summary judgment. (ECF No. 28). Defendants Sin City Investment Group, Inc., dba American Leak Detection of South Nevada, American Leak Detection SIMPLE IRA Plan, and Leland Keith Ozawa (collectively "defendants") responded, (ECF No. 32), and plaintiff replied, (ECF No. 34).

**I.      Background**

This case arises from defendants' alleged violations of ERISA. Following an administrative investigation, plaintiff filed its complaint, alleging (1) failure to timely remit employee contributions, (2) failure to maintain plan governing documents, and (3) vicarious liability for failure to remit employee contributions. (ECF No. 1).

Between June and September 2019, discovery was hampered by defendants' lack of response which was later explained by defendants' counsel under seal. (ECF No. 37). On June 28, 2019, plaintiff served written discovery responses to each defendant, including interrogatories, requests for production of documents, and requests for admissions. (ECF No. 22). Defendants' responses were due on July 29, 2019. (*Id.*). Defendants did not respond by this, nor any other, date. In August and September 2019, plaintiff's counsel corresponded with

**James C. Mahan**
**U.S. District Judge**

defendants' counsel regarding the status of discovery with little success. (*Id.*)  Fact discovery closed on September 23, 2019.  (*Id.*). Plaintiff filed a motion for discovery sanctions, (ECF No. 21), which this court denied on December 18, 2019, (ECF No. 42).  Defendants' counsel sufficiently explained his conduct under seal. (*Id.*).

The instant motion for summary judgment was filed on October 23, 2019.  (ECF No. 28). On November 27, 2019, plaintiff also moved to exclude portions of defendants' response to the instant motion. (ECF Nos. 35 & 39).  This court denied the motion to exclude. (ECF No. 40).

This court considers the parties' filings on this motion in their entirety.

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Rule 36(a)(3) provides that a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Fed.R.Civ.P. 36(a)(3). Thus, an unanswered request for admission is deemed admitted. "Unanswered requests for admissions may be relied on as the basis for granting

summary judgment." *Conlon v. United States,* 474 F.3d 616, 621 (9th Cir.2007) (*citing O'Campo v. Hardisty,* 262 F.2d 621, 624 (9th Cir.1958)).

### III. Discussion

Plaintiff seeks summary judgment largely based on matters admitted before this court by defendants' failure to respond to plaintiff's requests for admission. (ECF No. 28). As a matter of law, defendants' failure to respond means that the admissions are undisputed and "deemed admitted" in this case. Fed. R. Civ. P. 36(a)(3). "Unanswered requests for admissions may be relied on as the basis for granting summary judgment." *Conlon,* 474 F.3d at 621.

Rule 36(a)(3) of the Federal Rules of Civil Procedure provides that "[a] matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Untimely response results in *automatic admission* of the matters requested; an admitted matter is conclusively established "unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

However, the Ninth Circuit has long recognized the district court's discretion to permit late responses to requests for admission. *See, e.g.*, *French v. United States,* 416 F.2d 1149, 1152 (9th Cir.1968) ("A trial judge has discretion to permit a late response to a request for admissions made pursuant to [Rule 36], and thus relieve a party of apparent default."). The language of Rule 36(a) provides a court with discretion to extend the time for responding to requests for admissions, even after the time to respond has expired. Fed. R. Civ. P. 36(a)(3). In exercising its discretion, this court considers the present circumstances and public policy favoring disposition of cases on their merits strongly counsels against dismissal of a case or sanctions that are ultimately case-terminating. *See, e.g.*, *In re Phenylpropanolamine Prods. Liab. Litig.,* 460 F.3d 1217, 1228 (9th Cir.2006).

The following matters are possibly admitted due to defendants' lack of response:
- "The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and is subject to Title I of ERISA." (ECF Nos. 22-3 & 28).

- "At all relevant times, American Leak did not maintain Plan governing documents. Hence, there was no formal designation of a Plan Administrator, Plan Trustee, and named fiduciary during the relevant time period." (*Id.*).
- "At all relevant times, Leland Keith Ozawa was the President, Treasurer, Director, and majority owner of SCI." (*Id.*).
- "In his capacity, he had control over most, if not all, operations of the Defendant corporate entities and the Plan. For instance, he was the only authorized signatory for checks and/or payments to the Plan. signed checks drawn from bank accounts held in the name of, or on behalf of, Defendant corporate entities." (*Id.*).
- "Mr. Ozawa authorized or approved the payment of corporate operating expenses from American Leak Detection's checking accounts." (*Id.*).
- "He had the sole decision-making authority or control over the disposition of the Plan's assets." (*Id.*).
- "Mr. Ozawa further had supervisory and monitory authority over any American Leak employee who performed work in relation to the Plan." (*Id.*).
- "At all relevant times, Defendant corporate entities did not remit employee contributions to the Plan when they could be reasonably segregated from the company's assets, which was within seven business days." (*Id.*).
- "During the relevant timeframe, Defendant corporate entities did not remit $94,684.414 in employee contributions to the Plan when they were reasonably segregable." (*Id.*).
- "There were occasions when the Defendant corporate entities remitted contributions within eight (8) to 1,530 days." (*Id.*).
- "For example, Defendant corporate entities deducted employee contributions from employee pay on March 5, 2013, but did not remit the contributions to the Plan until May 22, 2017." (*Id.*).

**James C. Mahan**
**U.S. District Judge**

- "Defendant corporate entities also deducted employee contributions from salaries on July 20, 2013 and February 5, 2014, but did not remit the contributions to the Plan until January 17, 2017." (*Id.*).
- "Defendant corporations additionally did not remit until February 4, 2016 employee contributions taken out of participants' salaries on August 5, 2015." (*Id.*).
- "At all relevant times, Defendant corporations failed to remit completely $54,677.995 in employee contributions into the Plan." (*Id.*).
- "During the entirety of the relevant time period, Defendant entities co-mingled employee contributions in American Leak Detection's general assets, and they failed to pay lost opportunity costs for all untimely remittances into the Plan." (*Id.*).
- "As of the date of this filing, Defendants owe $11,212.516 in lost opportunity costs. Mr. Ozawa knew full well that employee contributions were not being remitted in a timely manner." (*Id.*).
- "Yet, the contributions remained co-mingled in American Leak's corporate accounts for non-Plan purposes, including payments for Mr. Ozawa's own personal and family expenses." (*Id.*).

If the foregoing facts are indeed admitted, this court finds it appropriate to grant judgment as a matter of law as to the plaintiff's first and second claims. The material facts, as distilled above, would lack genuine dispute.

Here, defendants have not—as of plaintiff's reply in support of its motion to exclude, (ECF No. 33)—responded to any of plaintiff's written discovery requests. Instead, defendants dispute plaintiff's admitted matters with their own new facts, substantiated by its exhibits and allusions to "hundreds of pages of documents" provided to plaintiff during administrative investigation. (ECF No. 31). Defendants conflate what occurred during the investigation with its formal obligations in civil litigation. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (recognizing that although they are "collaborative instrumentalities of justice," the administrative process is independent of federal litigation, and has a different development and process than the courts).

**James C. Mahan**
**U.S. District Judge**

While this court acknowledges the circumstances that appropriately allowed defendant to evade sanctions, those same circumstances do not excuse defendants' continued lack of response. The Federal Rules of Civil Procedure are not mere suggestions; attorneys admitted to practice have a duty of competence to their clients to understand and appreciate the applicable rules. Even considering the circumstances disclosed to this court under seal, defendants inaction is inexcusable—at the very least, defendants should have responded immediately following the order denying sanctions on December 18, 2019. This court's expectations were clear in its order: "Defendants' counsel . . . [will] right the ship and his health concerns will not interfere with this case again. . . . [A]s Defendants' counsel is now a member of a firm that includes other attorneys, the Court expects that counsel will seek help from the other attorneys in the firm to handle the responsibilities of this case if his health issues should interfere with his ability to meet those responsibilities in the future."   (ECF No. 42).  That order did not absolve defendants' counsel of his responsibilities.

Thus, this court finds the material facts admitted, and upon its consideration, grants summary judgment as to claims one and two. Defendants American Leak and Ozawa failed to remit employee contributions in a timely manner. 29 U.S.C. §§ 1103(c)(1); 1104 (a)(1)(A) and (B); 1105(a)(2); 1106(a) and (b). Defendants American Leak and Ozawa failed to maintain plan-governing documents.  29 U.S.C. §§ 1102(a)(1) and (b); 1103(a).

However, this court denies summary judgment on plaintiff's third claim, vicarious liability. Plaintiff cites a slew of caselaw from circuits other than the Ninth, (ECF No. 28), and in its reply, argues that vicarious liability is possible in cases involving "employee contributions" as opposed to "employer contributions." (ECF No. 28).  The Ninth Circuit has not yet allowed claims of this nature to proceed, and this court declines to do so. As it stands, ERISA strictly limits liability for fiduciary breach to a specific category of entities. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004) (refusing to extend liability to a party that it deemed not a "fiduciary" nor a "de facto fiduciary").  Vicarious liability allows ERISA to expand beyond those categories.  "The authority of courts to develop a federal common law

**James C. Mahan**
**U.S. District Judge**

- 7 -

under ERISA is not the authority to revise the text of the statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 (1993).

Consistent with the foregoing determinations, the movant shall submit its proposed judgment to which defendant shall respond with any opposition.

### IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for judgment (ECF No. 28) be, and the same hereby is, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that plaintiff submit a proposed judgment consistent with the foregoing within fourteen (14) days of this order, and defendants shall submit their objection to plaintiff's proposed judgment within seven (7) days thereof.

DATED June 15, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**